IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| REED COLLAR, et al., etc., | ) |
| | ) |
|     Plaintiffs, | ) |
| | ) |
| v. | ) CIVIL ACTION 14-0349-WS-B |
| | ) |
| TREVIS AUSTIN, etc., | ) |
| | ) |
|     Defendant. | ) |

**ORDER**

This matter is before the Court on the plaintiffs' motion for relief under Rule 56(d). (Doc. 21). The parties have filed briefs and other materials in support of their respective positions, (Docs. 21, 23, 31-33), and the motion is ripe for resolution.[1]

The plaintiffs' decedent ("Collar") was a student at the University of South Alabama ("the University") when, on the night of October 5-6, 2012, he was shot and killed by the defendant, a police officer employed by the University. Count One, brought pursuant to Section 1983, claims the defendant used excessive force in violation of the Fourth and Fourteenth Amendments. Count Two is a claim for wrongful death under Alabama law. (Doc. 1).

Shortly after answering the complaint, the defendant filed a motion for summary judgment, asserting qualified immunity as to the federal claim and state-agent immunity as to the state claim. (Doc. 7). At the same time, the defendant filed a motion to stay all proceedings, including discovery, pending a ruling on his motion for summary judgment. (Doc. 10). After full briefing, the Court denied

---

[1] The defendant's motion for leave to file a sur-reply, (Doc. 33), is **granted**. The plaintiffs' motion to strike the defendant's motion, (Doc. 35), is **denied**.

the motion to stay. (Doc. 18).[2] The defendant took the position that discovery is never allowed before ruling on a motion raising qualified immunity, but the Court concluded that pre-ruling discovery is precluded only when the defendant's motion denies that the plaintiff's version of the facts (as measured by the allegations of the complaint) reflects the violation of a clearly established constitutional right.  Because the defendant's motion for summary judgment does not assert that the plaintiffs' version of the facts is fatally deficient, and instead maintains only that *his* version of the facts negates the violation of a clearly established constitutional right, discovery prior to resolution of the motion is not precluded. (*Id*. at 2-4).

Without filing a motion to reconsider, the defendant argues that the two Supreme Court cases on which the Court relied actually stand for the proposition that, whenever a defendant on motion for summary judgment asserts qualified immunity, the Court is required, sua sponte, to determine whether the allegations of the complaint reflect the violation of a clearly established right. (Doc. 23 at 3-6).  The Court cannot agree.

The Supreme Court in *Anderson v. Creighton*, 483 U.S. 635 (1987), directed that, on remand, "it should first be determined whether the actions the [plaintiffs] allege [the defendant] to have taken are actions that a reasonable officer could have believed lawful." *Id*. at 646 n.6.  The defendant in *Anderson*, however, had filed "a motion to dismiss or for summary judgment," *id*. at 637, so it is clear he had in fact challenged the sufficiency of the complaint.  Because he had done so, it was of course necessary for the trial court on remand to determine whether the allegations of the complaint reflected the violation of a clearly established right.

In *Crawford-El v. Britton*, 523 U.S. 574 (1998), the Court stated that, "if the defendant does plead the immunity defense, the district court should resolve

---

[2] *Collar v. Austin*, 2014 WL 4854850 (S.D. Ala. 2014).

that threshold question before permitting discovery." *Id*. at 598.  The defendant in *Crawford-El*, however, had prevailed on a motion to dismiss,[3] so again it is clear that he had actually challenged the sufficiency of the complaint; there is thus no reason to believe the Supreme Court was requiring district courts to determine whether the complaint reflects the violation of a clearly established right even in the absence of a request to do so.  On the contrary, immediately after identifying the district court's task as one of "determin[ing] whether, assuming the truth of the plaintiff's allegations, the official's conduct violated clearly established law," the Court promptly dropped a footnote reminding readers that, "[i]f the district court enters an order denying the defendant's motion for dismissal or summary judgment," interlocutory appeal is available.  *Id*. at 598 & n.19.  The Supreme Court thus clearly contemplated pre-discovery evaluation of the complaint only when the defendant's dispositive motion requests it.

Such a procedure is fully consistent with Circuit precedent, which places burdens on a defendant desiring qualified immunity.  "Qualified immunity is an affirmative defense that may be waived."  *Bogle v. McClure*, 332 F.3d 1347, 1355 n.5 (11th Cir. 2003).  And although "qualified immunity can be pled at various stages in a case," including at trial or in a motion to dismiss, for judgment on the pleadings or for summary judgment, "all these pleadings must conform to the Federal Rules of Civil Procedure."  *Skrtich v. Thornton*, 280 F.3d 1295, 1306 (11th Cir. 2002).  Thus, in *Skrtich*, defendants who did not raise qualified immunity until their third motion to dismiss waived the right to have qualified immunity considered at that stage.  *Id*. at 1306-07.  As these cases demonstrate, a defendant cannot receive the benefit of qualified immunity without asking for it, at the proper time and in the proper manner.

Even more specifically, "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials

---

[3] *Crawford-El v. Britton*, 93 F.3d 813, 815 (D.C. Cir. 1996) (en banc), *vacated and remanded*, 523 U.S. 574 (1998).

before it on summary judgment," *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995), and this rule extends to qualified immunity arguments. *Gennusa v. Canova*, 748 F.3d 1103, 1116-17 (11th Cir. 2014) (trial court was not required to address an exigent circumstances argument superficially mentioned in support of a qualified immunity defense) (citing *Resolution Trust*). Contrary to these opinions, the defendant here insists that the Court must address an argument that is not merely indiscernible in, but that is utterly absent from, his motion for summary judgment. Beyond his overly expansive reading of *Anderson* and *Crawford-El*, the defendant offers no justification for ignoring this clear appellate authority.

In his opposition to Collar's Rule 56(d) motion, as in his reply brief in support of his motion to stay, the defendant asserts that the complaint fails to allege acts which, if true, violated Collar's clearly established rights. (Doc. 16 at 15; Doc. 23 at 6 & n.2). The defendant argues that these assertions compensate for his failure to make such an argument on motion for summary judgment and thereby compel the Court to evaluate the complaint before considering discovery. (*Id*.). The defendant cites no authority permitting him to inject this issue by such a procedure, and the Court is dubious, especially as *Skrtitch*'s listing of pleadings in which qualified immunity may properly be asserted does not include anything remotely resembling the defendant's filings. Nevertheless, because the plaintiffs do not disagree with the defendant's contention but instead defend the adequacy of their complaint,[4] the Court considers whether that pleading alleges facts which, if correct, reflect that the defendant violated clearly established law. In making this assessment, the Court "accept[s] the factual allegations in the complaint as true

---

[4] "[T]he initial issue before the Court [is]: do Collar's allegations establish a violation of his rights in the context of the facts at bar (as alleged by Collar), and was that right (in the context of these facts) clearly established at the time?" (Doc. 31 at 3). Because the plaintiffs "have established by allegations of facts which must be accepted as true for this analysis the violation of a known constitutional right[,] [t]he issue now is what discovery will be permitted to allow the Collars an opportunity to prove their case." (*Id*. at 11).

and views them in the light most favorable to" the plaintiffs. *Saunders v. Duke*, 766 F.3d 1262, 1266 (11th Cir. 2014); *accord St. George v. Pinellas County*, 285 F.3d 1334, 1337 (11th Cir. 2002).

In pertinent part, the complaint alleges that Collar ingested a foreign substance that caused him to become "confused, disoriented and agitated." In this state, Collar removed all his clothes and, disrobed and obviously unarmed, sought to gain access to the campus police station to seek help for his distressing condition, first by hitting the door and then by striking the window. Collar then walked away from the building; no one else was around. The defendant exited the police station with service weapon drawn and confronted Collar, who was five inches shorter than the defendant and 50 pounds lighter. The defendant's firearm remained trained on Collar throughout their encounter. (Doc. 1, ¶¶ 16, 17, 21-24, 27, 33). "At no point did Gilbert Collar threaten to harm Defendant Austin, or attempt to grab Defendant Austin's weapon, or attempt to touch or strike Defendant Austin." (*Id*., ¶ 34). "Nevertheless, when Gilbert Collar was yards away from Defendant Austin and not evidencing any overt, aggressive actions, Defendant Austin … pointed his weapon at Gilbert Collar's torso and fired directly into his body essentially at point-blank range." (*Id*., ¶¶ 35-36). When the defendant shot Collar, he knew or objectively should have known that Collar posed no imminent threat of serious bodily injury or death to the defendant or others. (*Id*., ¶ 58.b, .d).

The defendant asserts he shot Collar while "attempting to arrest" him. (Doc. 31 at 9). "Fourth Amendment jurisprudence has long recognized that the right to make an arrest … necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Jean-Baptiste v. Gutierrez*, 627 F.3d 816, 821 (11th Cir. 2010) (internal quotes omitted). However, "[a]ny use of force must be reasonable." *Id*.

"Reasonableness is dependent on all the circumstances that are relevant to the officer's decision to use deadly force, including [1] the seriousness of the

5

crime, [2] whether the suspect poses an immediate danger to the officer or others, [3] whether the suspect resisted or attempted to evade arrest, and [4] the feasibility of providing a warning before employing deadly force." *Jean-Baptiste*, 627 F.3d at 821. "Other considerations are [5] the need for the application of force, [6] the relationship between the need and the amount of force used, and [7] the extent of the injury inflicted." *Saunders*, 766 F.3d at 1267 (internal quotes omitted).

The defendant does not identify any crime for which he sought to arrest Collar, and the only apparent candidates are public intoxication and indecent exposure.[5] Indecent exposure is a misdemeanor, while public intoxication is a mere violation,[6] so the offenses rank low on the scale of seriousness.[7] The second factor looks for a threat of "serious physical harm,"[8] and the complaint negates any immediate danger of serious physical harm to the defendant or anyone else. (Doc. 1, ¶¶ 24, 34-35). As for the third and fourth factors, the complaint does not indicate that Collar resisted or evaded arrest, and it does not indicate that the defendant gave a warning before discharging his firearm or that such a warning

---

[5] Disorderly conduct and resisting arrest also have been considered, but the allegations of the complaint would not support either charge. At any rate, both are misdemeanors, *see* Ala. Code §§ 13A-10-41, -11-7, and thus, as discussed in text, of minor severity.

[6] Ala. Code §§ 13A-1-2(16), -5-7, -6-68, -11-10.

[7] *See, e.g., Galvez v. Bruce*, 552 F.3d 1238, 1243 (11th Cir. 2008) (petit theft and resisting arrest without violence "were not severe" as they "are both misdemeanors"); *Reese v. Herbert*, 527 F.3d 1253, 1274 (11th Cir. 2008) ("The crime of misdemeanor obstruction is a crime of 'minor severity' for which less force is generally appropriate."); *Davis v. Williams*, 451 F.3d 759, 764, 767 (11th Cir. 2006) (neither disorderly conduct nor obstruction of justice is a "serious crime"); *Vinyard v. Wilson*, 311 F.3d 1340, 1347 (11th Cir. 2002) (the plaintiff's "crimes, disorderly conduct and obstruction, were of minor severity").

[8] *Penley v. Eslinger*, 605 F.3d 843, 851 (11th Cir. 2010).

was infeasible. The fifth factor is redundant with the first three.[9] The extent of injury inflicted – death – is the maximum possible,[10] and the relationship between the need for force (non-existent or nearly so) and the amount of force employed (deadly) is patently and grossly disproportionate.[11]

The allegations of the complaint, in short, accepted as true for present purposes, reflect that the defendant used deadly force to arrest an individual known to be an unarmed, nondangerous, unresisting misdemeanant. The question becomes whether it was clearly established in October 2012 that such conduct was unconstitutional. Plainly it was.

Except in rare instances when the very language of a constitutional or statutory provision is sufficiently clear and specific, a plaintiff must rely on Supreme Court and Eleventh Circuit case law pre-dating the challenged conduct. *E.g., Coffin v. Brandau*, 642 F.3d 999, 1013 (11th Cir. 2011) (en banc). "We do not always require a case directly on point …; a constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has not previously been held unlawful." *Gennusa*, 748 F.3d at 1113 (internal quotes omitted).

"A police officer may not seize an unarmed, nondangerous suspect by shooting him dead." *Tennessee v. Garner*, 471 U.S. 1, 11 (1985). "Other cases confirm that non-violent suspects, accused of minor crimes, who have not resisted arrest … are victims of constitutional abuse when police used [sic] extreme force

---

[9] Supreme Court jurisprudence "dictates unambiguously that the force used by a police officer in carrying out an arrest must be reasonably proportionate to the need for that force, which is measured by the severity of the crime, the danger to the officer, and the risk of flight." *Lee v. Ferraro*, 284 F.3d 1188, 1198 (11th Cir. 2002).

[10] "The intrusiveness of a seizure by means of deadly force is unmatched." *Tennessee v. Garner*, 471 U.S. 1, 11 (1985).

[11] "When the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so." *Id*.

to subdue them." *Fils v. City of Aventura*, 647 F.3d 1272, 1289 (11th Cir. 2011). As these and similar statements demonstrate, it was clearly established in October 2012 that arresting an unarmed, nondangerous, unresisting misdemeanant by killing him – which is what the complaint alleges – violates the Fourth Amendment.

The defendant does not seriously disagree. On the contrary, he concedes that the complaint "perhaps" or "might" reflect a violation of Collar's clearly established constitutional rights. (Doc. 23 at 12-13). The defendant argues, however, that the Court "can and should" also consider a video taken from outside the police station, which "obliterates" the complaint's allegation that Collar posed no immediate threat of serious physical harm. (*Id.* at 13-14).

The defendant has not explained how the Court may properly consider the video in assessing the adequacy of the complaint. However, because the plaintiffs do not oppose such consideration and instead argue that the video confirms the complaint's allegations, (Doc. 31 at 6, 8, 9), the Court assesses its impact.[12]

According to the defendant, the video shows that Collar "engaged in a series of fighting poses and quickly charged after [the defendant,] who was retreating with a firearm pointed at Collar, and that Collar was very aggressive and violent." (Doc. 23 at 8 n.3). He continues that Collar "aggressively charged[d]" him and got "very close" to him, "within arm's length." (*Id.* at 12-13). In summary, "the video shows a violent, unpredictable, drug-crazed, noncompliant Collar charging at an armed officer." (*Id.* at 14). Because "a video recording of an incident makes a party's contrary statements and testimony incredible," (*id.* at 8

---

[12] The Court notes the complaint's allegation that Collar's "actions and demeanor in the moments leading up to his death as depicted by the video recordings make clear to any objective observer that he was in need of help at that time." (Doc. 1, ¶ 20). Although the video is not attached as an exhibit to the complaint so as to make it part of the complaint under Rule 10(c), it may be that the complaint's reliance on the video implicates the "incorporation by reference" doctrine, *see Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002), or some analogue thereof. The plaintiffs' willingness to have the video considered renders it unnecessary for the Court to identify which legal principle, if any, would justify such consideration over objection.

n.7), the defendant concludes that the plaintiffs "cannot dispute these facts with contrary allegations." (*Id.* at 12).

The defendant has overstated both the contents of the video and the legal standard for evaluating it. As stated in the case on which the defendant relies, the rule is that, "'where an accurate video recording completely and clearly contradicts a party's testimony, that testimony becomes incredible.'" *Windham v. City of Fairhope*, 20 F. Supp. 3d 1323, 1329 (S.D. Ala. 2014) (quoting *Morton v. Kirkwood*, 707 F.3d 1276, 1284 (11th Cir. 2013)). To qualify under this rule, the video must "so utterly discredit [the plaintiff's version] that no reasonable jury could believe it." *Morton*, 707 F.3d at 1284. The video – which runs approximately thirty seconds from the moment the defendant opens the police building door to the moment Collar is shot – does not live up to this exacting standard.

The video does not show Collar ever touching the defendant or reaching for him or his gun. The defendant insists the video proves that Collar was "never "'yards away'" from him, (Doc. 23 at 14), but to the Court it appears the video shows that Collar was never much closer than about six feet (two yards) from the defendant.[13] The defendant insists the video proves that Collar at one point "came within arm's length" of him[14] but, because he and Collar were at the far end of the station patio and in a straight line to the camera, it is not possible to reliably

---

[13] The defendant suggests the complaint's allegation that Collar was shot "essentially at point-blank range," (Doc. 1, ¶ 36), contradicts the allegation that he was "yards away" from the defendant when he was shot. (Doc. 23 at 13 & n.6). There is no inconsistency. Technically, "point blank" means that the target is so close that the shooter in aiming need not account for gravity's effect on the bullet's trajectory. Colloquially, it connotes a target so close the shooter can scarcely miss. Either usage is fully compatible with firing a .40 caliber sidearm, (Doc. 1, ¶ 27), from a distance of about six feet.

[14] The defendant quantifies this distance as one to two feet. (Doc. 33 at 8, 10).

estimate their separation distance at that moment.[15] The defendant insists the video proves that Collar assumed "a series of fighting poses," but the only "pose" the video clearly shows is Collar kneeling as the defendant retreats; Collar at times moves his feet and arms in a manner that could possibly mimic the motions of a boxer in a ring, but these moments are brief and ambiguous, especially given that the video never appears to show Collar's hands in a fist or his arms extended towards the defendant. The defendant insists the video proves that Collar "quickly charged" after him, but in those portions of the video in which Collar's forward motion is observable, he appears to be moving at approximately three feet per second, or about two miles per hour – generally considered an ambling pace. The defendant insists the video proves that Collar was "noncompliant" but, since there is no audio component, the video fails to show that the defendant issued any orders. The defendant insists the video proves that Collar was "very aggressive" but, as noted, Collar's movement towards the defendant does not appear to have been either swift or sudden, and he appears to have maintained a distance of about six feet, sometimes more, throughout the defendant's retreat; for all that appears on the video, as the defendant backed up Collar was simply maintaining contact with him as he sought assistance. The defendant insists the video proves that Collar was "unpredictable [and] drug-crazed" but, as discussed above, this is at best one of multiple constructions of what the video depicts.

For a variety of reasons, the video does not show, and show clearly, everything that occurred during the thirty seconds during which the defendant and Collar interacted.[16] Consequently, the video probably does not render the

---

[15] Because the defendant plainly appears to be much further from Collar both one second before and one second after the instant on which the defendant seizes, it seems unlikely they were much closer in the interim.

[16] The video camera is in a fixed position, so portions of the sequence are closer and in better focus than others. The participants' movements after they left the covered front patio of the police station are partially obscured by brick columns, a banner, the

defendant's version of events incredible.  For present purposes, however, what matters is that the video does not "so utterly discredit [the plaintiffs' version] that no reasonable jury could believe it."  *Morton*, 707 F.3d at 1284.  The allegations of the complaint thus remain intact and, as discussed above, they reflect the violation of a clearly established constitutional right.

Under such circumstances, "the plaintiff ordinarily will be entitled to some discovery."  *Crawford-El*, 523 U.S. at 598; *accord Anderson*, 483 U.S. at 646 n.6 (when the plaintiffs (as here) allege actions that no reasonable officer could have believed lawful, "and if the actions [the defendant] claims he took are different from those [the plaintiffs] allege …, then discovery may be necessary before [the defendant's] motion for summary judgment on qualified immunity grounds can be resolved").  "Of course, any such discovery should be tailored specifically to the question of [the defendant's] qualified immunity."  *Id*.; *accord Crawford-El*, 523 U.S. at 599-600 ("Of course, the judge should give priority to discovery concerning issues that bear upon the qualified immunity defense, such as the actions that the official actually took, since that defense should be resolved as early as possible.").

The mechanism for obtaining such discovery is Rule 56(d):

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
> (1) defer considering the motion or deny it;
> (2) allow time to obtain affidavits or declarations or to take discovery; or
> (3) issue any other appropriate order.

Fed. R. Civ. P. 56(d).[17]

---

glare of artificial lighting and the darkness of the surrounding night.  Even on the patio, the video cannot capture what is not facing the camera or is blocked from view.

[17] Current Rule 56(d) "carries forward without substantial change the provisions of former subdivision (f)."  Fed. R. Civ. P. 56 advisory committee notes 2010 amendments.  The Court therefore considers precedents decided under former Rule 56(f).

The defendant first objects that the plaintiffs have filed no affidavit. (Doc. 23 at 18 n.9, 20). Despite the wording of the rule, "[i]n this Circuit, a party opposing a motion for summary judgment need not file an affidavit … in order to invoke the protection of" Rule 56(d); the "written representation" of counsel is sufficient. *Snook v. Trust Co. of Georgia*, 859 F.2d 865, 871 (11th Cir. 1988). The absence of an affidavit is thus immaterial.

"A Rule 56([d]) motion must … se[t] forth with particularity the facts the moving party expects to discover and how those facts would create a genuine issue of material fact precluding summary judgment." *Harbert International, Inc. v. James*, 157 F.3d 1271, 1280 (11th Cir. 1998).[18] The defendant denies that the plaintiffs have complied with this directive. (Doc. 23 at 20-23).

The plaintiffs identify the discovery they need as: (1) the defendant's deposition; (2) the campus police chief's deposition; (3) the depositions of campus officers who witnessed some or all of the event; (4) inspection of the premises; (5) the medical examiner's deposition; and (6) the depositions of investigators. (Doc. 21 at 10-14). The significance of this discovery seems obvious. The critical issue on the defendant's motion for summary judgment as to the federal claim is what actually occurred in the moments before Collar was shot, (Doc. 8 at 24-30), and on this issue the defendant relies on his interrogatory responses from the previous state action and on the video discussed above. (*Id*. at 3-6). Because Collar is deceased, the plaintiffs cannot rely on his version of events. The defendant's discovery responses are untested and, as discussed above, the video is limited in scope and largely inconclusive, though it can be viewed as supportive of the

---

[18] *Accord Exigent Technology, Inc. v. Atrana Solutions, Inc*., 442 F.3d 1301, 1310 (11th Cir. 2006); *see also Securities and Exchange Commission v. Spence & Green Chemical Co*., 612 F.2d 896, 901 (5th Cir. 1980) (a Rule 56(d) movant must "specifically demonstrate[e] how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of material fact" and "may not simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts").

plaintiffs' claim. All proposed depositions are of persons believed to have information concerning what occurred in the moments before Collar was shot,[19] and the premises inspection would reveal distances and perhaps other information needed for assessing and countering the defendant's version of events. The plaintiffs pointed out all of this in their motion. (Doc. 21 at 10-14).

The defendant is vague about what he contends is missing from the plaintiffs' presentation. To the extent he suggests the plaintiffs must warrant that they "expect" the deponents' testimony will support their case and damage the defendant's, the Court has previously read *Harbert* as requiring not "a representation that discovery probably will be successful [but] an explanation of how discovery could be successful." *Williams v. Le Crewe de Spaniards*, 2009 WL 3381519 at *2 (S.D. Ala. 2009). Such an explanation is both provided and obvious – discovery concerning what occurred on the night of October 5-6, 2012 could easily reveal evidence that the defendant shot Collar in violation of his clearly established constitutional rights.

To the extent the defendant suggests the plaintiffs must list "the facts" they hope to elicit in discovery, it is clear they are looking for evidence corroborating the factual allegations of the complaint and their construction of what the video

---

[19] As the plaintiffs note, (Doc. 21 at 13-14), information from the medical examiner could help determine how far Collar was from the defendant when he was shot. The investigators could provide information concerning statements made by witnesses and reduce material from their files to admissible form. The defendant does not dispute the plaintiff's statement that much of the content of those files is presently objectionable under Rule 56(c)(2). (*Id.* at 3).

The defendant submitted the affidavit of Chief Aull in support of his motion for summary judgment. (Doc. 8-10). Although the affidavit largely addresses the content and scope of University policies on use of force and of the defendant's compliance with them (to support the defendant's assertion of state-agent immunity), it also expresses Chief Aull's opinion – based in part on his interview of the plaintiff and review of other material – that the defendant properly employed deadly force.

reveals.[20]  To the extent he suggests the plaintiffs must explain how such evidence would "preclud[e] summary judgment," their discussion of the complaint and the video does so.[21]

"Whether to grant or deny a Rule 56([d]) motion for discovery requires the court to balance the movant's demonstrated need for discovery against the burden such discovery will place on the opposing party." *Harbert*, 157 F.3d at 1280.  The defendant denies that the plaintiffs have any demonstrated need for discovery because:  (1) they have his interrogatory responses; (2) his version of events is conclusively confirmed by the video; and (3) the plaintiffs had "ample discovery" in the previous state action.  (Doc. 23 at 21, 23-25).  As discussed below, none of these arguments is meritorious.

The defendant sniffs that the plaintiffs have no need for discovery as to what happened because he, in his untested interrogatory responses, has told them.  (Doc. 23 at 21).  He offers no authority, however, for the peculiar proposition that a defendant may deny a plaintiff any discovery by the simple expedient of moving for summary judgment on the strength of his unilateral, intensely self-interested, exculpatory sworn statement.[22]  "The parties' comparative access to the witnesses

---

[20] The defendant relies on *Garner v. City of Ozark*, 587 Fed. Appx. 515 (11th Cir. 2014).  In *Garner*, however, the plaintiff simply stated she "would like to present expert witnesses on recognition of individuals with autism, proper handling of police dogs, and the nature of [the defendant's] capacity and propensity for physical violence." *Id*. at 518.  Identifying the subject matter of proposed expert testimony plainly did not identify the factual matters the plaintiff sought to discover.

[21] The defendant objects that the plaintiffs improperly used their reply brief to fill some of these alleged gaps in their Rule 56(d) presentation.  (Doc. 33 at 2).  The Court finds the plaintiffs' principal brief to include a fully adequate presentation but, in any event, the defendant's filing of a sur-reply brief negates any prejudice to him from the plaintiffs' reply brief.

[22] The defendant cites only *Ex parte Haralson*, 871 So. 2d 802 (Ala. 2003).  Even could a state court decision control the Court's construction and application of Rule 56(d), *Haralson* is irrelevant because the plaintiff there, while objecting to resolution of a motion for summary judgment based on the defendant's affidavit, did not move for discovery under Alabama's version of Rule 56(d). *Id*. at 807.  (cont'd)

14

or material relevant to the disposition of the rule 56([d]) motion is a particularly salient factor for the trial court to consider in exercising its discretion." *Walters v. City of Ocean Springs*, 626 F.2d 1317, 1321 (5th Cir. 1980). Forcing the plaintiffs to take the defendant's carefully crafted statement at face value does not afford them comparable access to this singularly important witness.[23]

The defendant, returning to a previous argument, insists that the video is so conclusive, and so perfectly corroborative of his version of events, that discovery would be futile and is thus unneeded. (Doc. 23 at 25). As set forth above, the video does not so utterly discredit the plaintiff's version that no jury could accept it; on the contrary, in multiple particulars it draws the defendant's version of events into question.

According to the plaintiffs, the only discovery materials they received in the state suit were the defendant's interrogatory responses and investigative materials from the county sheriff. Discovery was stayed for all but about four months, based on orders sought and obtained by the defendant, with the final stay entered the day after the plaintiff received the interrogatory responses. (Doc. 21 at 2-3). The defendant disputes none of this. Instead, the defendant suggests counsel has admitted in a statement to the media that the only evidence the plaintiffs need is the video. (Doc. 23 at 24).[24] Counsel's comment is not nearly so strong as that but, even if it were, such a statement, offered for public consumption, does not

---

Parenthetically, the defendant's purported "adopt[ion] and incorporat[ion]" of his argument concerning *Haralson* from his reply brief on motion to stay, (Doc. 23 at 22-23), is an improper and ineffective effort to avoid the page limitations of Local Rule 7.1(b).

[23] The defendant describes Chief Aull as a disinterested witness, such that his affidavit cannot be disregarded so long as it is "uncontroverted and unimpeached." (Doc. 23 at 23). That may be so, but it is unresponsive to the issue whether the plaintiffs should be permitted discovery in order to controvert or impeach his affidavit.

[24] The parties do not state when the plaintiffs came into possession of the video, and the earliest disclosure the Court can confirm is as an attachment to the video to the defendant's amended answer in this action. (Doc. 5-1).

15

constitute a judicial admission and is irrelevant to the Court's consideration of the pending motion.

The plaintiffs' need for discovery having been demonstrated, the Court's task becomes one of "balanc[ing] the movant's demonstrated need for discovery against the burden such discovery will place on the opposing party." *Harbert*, 157 F.3d at 1280. "In qualified immunity cases, the Rule 56([d]) balancing is done with a thumb on the side of the scale weighing against discovery." *Id*. As the *Harbert* Court explained, this colorful imagery means only that the Court "'must exercise its discretion so that officials are not subjected to *unnecessary and burdensome* discovery or trial proceedings.'" *Id*. (quoting *Crawford-El*, 523 U.S. at 597-98) (emphasis added). This is accomplished by ensuring that "any such discovery [is] tailored specifically to the question of [the defendant's] qualified immunity." *Anderson*, 483 U.S. at 646 n.6.[25]

The Court, after carefully considering the foregoing, the plaintiffs' requested discovery and the defendant's response thereto, (Doc. 21 at 10-14; Doc. 23 at 26-30), concludes that the plaintiffs should be permitted to engage in the following discovery prior to any ruling on the defendant's motion for summary judgment:

1. Deposition of the defendant, limited to the following topics:
    a. The defendant's background, training and familiarity with University policies concerning use of force;

---

[25] The plaintiffs acknowledge *Harbert* as authoritative concerning their federal claim but argue they are entitled to "full discovery" with respect to their state claim. (Doc. 21 at 10, 16). The Court is doubtful that Rule 56(d) can be construed any more leniently in the latter context. Because "[d]iscretionary-function immunity arising under Alabama law is, like qualified immunity arising under federal law, immunity from suit," denials of state immunity may be raised on interlocutory appeal under the same circumstances as denials of qualified immunity. *Taylor v. Adams*, 221 F.3d 1254, 1260 n.9 (11th Cir. 2000). For the same reason, the Court concludes that the balancing required by Rule 56(d) must be conducted similarly for both qualified immunity and state-agent immunity.

    b.    The defendant's duties as a campus police officer, both generally and on the night in question;

    c.    The equipment issued and available to him and instructions regarding its use;

    d.    The existence and use of audio and video monitors, outside the police station and on the person of officers;

    e.    The encounter between the defendant and Collar, including the defendant's thoughts and including comparison with other evidence of the encounter, from the moment the defendant opened the station door to the moment Collar was shot; and

    f.    The defendant's interrogatory responses and any statements made to investigators.

2. Deposition of Chief Aull, limited to the following topic:

    a.    Cross-examination on matters addressed in his affidavit.

3. Depositions of Jeff Loman, Bernard Parrish and any other campus officer that arrived on the scene before, or shortly after, the shooting, limited to the following topic:

    a.    Their eyewitness accounts of the encounter between the defendant and Collar.

4. Deposition of the medical examiner who performed the autopsy, limited to the following topic:

    a.    The distance between the defendant and Collar at the moment Collar was shot.

5. Deposition of anyone connected with the sheriff's department who investigated the shooting incident, limited to the following topics:

    a.    Statements taken from the defendant or any other witness; and

    b.    Documentation of the scene, including authentication.

6. Inspection of the premises by plaintiffs' counsel and expert, including

without limitation the taking of measurements.

The defendant's protests notwithstanding, all of this discovery is relevant to one or more issues that must be addressed in resolving his motion for summary judgment on the grounds of qualified and state-agent immunity, including at least the following:  (1) whether the defendant was acting within his discretionary authority; (2) what actually occurred; (3) the seriousness of the crime or crimes for which the defendant sought to arrest Collar; (4) whether Collar posed an immediate threat of serious bodily harm; (5) Collar's resistance vel non to arrest; (6) the defendant's provision vel non of a warning before employing deadly force; and (7) the existence and scope of policies and/or orders concerning use of force and the defendant's compliance vel non with them.

To the extent set forth above, the plaintiffs' motion for relief under Rule 56(d) is **granted**.  The Magistrate Judge will enter an order establishing a time frame for such discovery and will, as in all cases, resolve any disputes that may arise.  Once this limited discovery is completed or the time for completion passed, the Court will enter an order establishing a briefing schedule on the defendant's motion for summary judgment.  To the extent the plaintiffs seek different or additional relief, their motion is **denied**.[26]

DONE and ORDERED this 5th day of February, 2015.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE

---

[26] Without limitation, this denial includes the plaintiffs' request that the Court deny the defendant's motion for summary judgment, (Doc. 21 at 17), and any request for additional discovery.