[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
————————————————————

No. 15-14482
————————————————————

D.C. Docket No. 1:14-cv-00349-WS-B


REED COLLAR,
parent of G.C., deceased minor,
BONNIE COLLAR,
parent of G.C., deceased minor,

Plaintiffs-Appellants,

versus

TREVIS AUSTIN,
in his individual and official capacities,

Defendant-Appellee.

————————————————————

Appeal from the United States District Court
for the Southern District of Alabama
————————————————————

(September 2, 2016)

Before ED CARNES, Chief Judge, JORDAN, Circuit Judge, and SMITH,[*] District Judge.

PER CURIAM:

After the tragic death of Gil Collar at the University of South Alabama, his parents Reed and Bonnie Collar filed a lawsuit against Trevis Austin, a campus police officer employed by the University, who fired the shot that killed their son. Asserting a claim under 42 U.S.C. § 1983, they alleged that the shooting constituted excessive force in violation of the Fourth and Fourteenth Amendments. They also asserted a claim for wrongful death under Alabama law. After discovery, the United States District Court for the Southern District of Alabama entered summary judgment in favor of Austin. This is the Collars' appeal from that judgment.

After careful consideration of the briefs and the relevant parts of the record, and with the benefit of oral argument that assisted us in making our decision, we affirm the district court's judgment based on its well-reasoned order, <u>Collar v. Austin</u>, No. 14-0349-WS-B, 2015 WL 5444347 (S.D. Ala. Sept. 15, 2015), subject to one reservation, and we also offer two additional observations. Our one reservation is about the facts for summary judgment purposes. The district court appears to have resolved one genuine factual dispute in favor of Officer Austin,

_____
[*] Honorable C. Lynwood Smith, Jr., United States District Judge for the Northern District of Alabama, sitting by designation.

who was the movant. The court accepted as fact Austin's deposition testimony that he did not know that his fellow officer, Bernard Parrish, was nearby at the time of the shooting. In his deposition testimony, however, Officer Parrish testified that he was in a nearby parking lot when he heard the radio call, that he approached Austin and Gil Collar from the police station's parking lot, and that he yelled at Collar to get down before Austin fired the shot. Under the evidence viewed in the light most favorable to the plaintiffs, a jury could conclude that seconds before Austin fired he knew that Parrish was nearby.

Even so, there is no evidence that Officer Parrish was close enough to Austin to offer non-lethal assistance as Gil Collar was quickly advancing on Austin, who continued to back up in an unsuccessful attempt to avoid Collar's rapid approach. Under those circumstances, a reasonable officer could have believed that Collar posed an immediate threat of death or serious injury, notwithstanding the fact another officer was somewhere behind that officer. See Brown v. City of Huntsville, 608 F.3d 724, 733 (11th Cir. 2010) ("A law enforcement officer is entitled to qualified immunity if an objectively reasonable officer in the same situation could have believed that the force used was not excessive.") (quotation marks omitted); Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002) ("An officer will be entitled to qualified immunity if his actions were objectively reasonable, that is if an objectively reasonable officer in the same

situation could have believed that the force used was not excessive."); Montoute v. Carr, 114 F.3d 181, 184 (11th Cir. 1997) ("[T]he question is whether [the plaintiff] has convinced us that at the time [the officer] shot him no officer reasonably could have believed that [the plaintiff] . . . posed a risk of serious physical injury . . . .").

We add one additional fact to the district court's discussion of the Collars' argument that Officer Austin could have used pepper spray instead of lethal force to avoid any danger to himself. The district court's order acknowledges that Austin tried to unholster his pepper spray but abandoned the effort as Gil Collar quickly approached him. Although the order does not mention it, the record contains as an exhibit photographs of Austin with his duty belt on. The photographs show that Austin's pepper spray was carried in a holster on his right-hand side, the same side as his firearm holster. As a result, in order to use his pepper spray, Austin would have had to holster his firearm with his right hand, and then open the holster holding the pepper spray, and then remove the pepper spray and position it in his hands to spray it, and then aim it at Collar and spray it, all in a few seconds as Austin was quickly moving backwards in an unsuccessful attempt to avoid the rapidly approaching Collar. In those circumstances, a reasonable officer could have concluded that there was not time to attempt to stop the charge with pepper spray.

The other observation we add is that the death of Gil Collar is unquestionably tragic. It is yet another example of the bizarre behavior that drugs can produce and the terrible toll that they exact. We also realize the sincerity of the parents' belief that their son's death could have been avoided, that it was unnecessary to shoot him. With the benefit of hindsight and having had much time to contemplate the matter, we may agree with them that the shooting could have been avoided. Officer Austin, however, did not have time for contemplation. Four seconds after he came out of the police station in the middle of the night to investigate the loud sounds that he had heard, Gil Collar confronted him and was acting bizarrely. From that moment until Austin had to make a decision about whether he was under the threat of serious physical injury or death, only about twenty-five seconds elapsed. Austin had spent virtually all of that time backing up in an unsuccessful attempt to maintain a safe distance between himself and Collar.

As both the Supreme Court and this Court have explained, "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments — in circumstances that are tense, uncertain, and rapidly evolving — about the amount of force that is necessary in a particular situation." Graham v. Connor, 490 U.S. 386, 396–97, 109 S. Ct. 1865, 1872 (1989). For that reason, "[i]n making an excessive force inquiry, we are not to view the matter as judges from the comfort and safety of our chambers, fearful

of nothing more threatening than the occasional paper cut as we read a cold record accounting of what turned out to be the facts." Crosby v. Monroe Cty., 394 F.3d 1328, 1333–34 (11th Cir. 2004). Instead, "[w]e must see the situation through the eyes of the officer on the scene who is hampered by incomplete information and forced to make a split-second decision between action and inaction in circumstances where inaction could prove fatal." Id. at 1334; see also Kesinger ex rel. Estate of Kesinger v. Herrington, 381 F.3d 1243, 1248 (11th Cir. 2004) (explaining that an officer's use of force "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight"); Garrett v. Athens–Clarke Cty., 378 F.3d 1274, 1279 (11th Cir. 2004) (same). Judging the matter from the perspective of a reasonable officer on the scene, Officer Austin is entitled to qualified immunity.

**AFFIRMED.**

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

September 02, 2016

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number: 15-14482-GG
Case Style: Reed Collar, et al v. Trevis Austin
District Court Docket No: 1:14-cv-00349-WS-B

**This Court requires all counsel to file documents electronically using the Electronic Case Files ("ECF")
system, unless exempted for good cause.** Enclosed is a copy of the court's decision filed today in this appeal.
Judgment has this day been entered pursuant to FRAP 36. The court's mandate will issue at a later date in
accordance with FRAP 41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for
rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings,
a petition for rehearing or for rehearing en banc is timely only if received in the clerk's office within the time
specified in the rules. Costs are governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a
motion for attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested Persons a complete list
of all persons and entities listed on all certificates previously filed by any party in the appeal. See 11th Cir. R. 26.1-
1. In addition, a copy of the opinion sought to be reheard must be included in any petition for rehearing or petition
for rehearing en banc. See 11th Cir. R. 35-5(k) and 40-1 .

Counsel appointed under the CRIMINAL JUSTICE ACT must file a CJA voucher claiming compensation for time
spent on the appeal no later than 60 days after either issuance of mandate or filing with the U.S. Supreme Court of a
petition for a writ of certiorari (whichever is later).

Pursuant to Fed.R.App.P. 39, cost staxed against appellant.

The Bill of Costs form is available on the internet at www.ca11.uscourts.gov

For questions concerning the issuance of the decision of this court, please call the number referenced in the signature
block below. For all other questions, please call Eleanor M. Dixon, GG at (404) 335-6172.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to: Jeff R. Patch
Phone #: 404-335-6161

                                                                OPIN-1A Issuance of Opinion With Costs